# In the United States Court of Federal Claims

No. 14-429 C
(Filed September 10, 2014)[1]

```
* * * * * * * * * * * * * * * *
BANNUM, INC.,                    *
                                 *   Pre-Award Bid Protest;
            Plaintiff,           *   Supplementation of the
                                 *   Administrative Record Not
      v.                         *   Appropriate; Rational
                                 *   Rejection of Protestor's Bid
THE UNITED STATES,               *   for Failure to Provide Valid
                                 *   Proof of Zoning; No Evidence
            Defendant,           *   of Disparate Treatment of
                                 *   Offerors.
ALSTON WILKES SOCIETY, INC.,     *
                                 *
            Intervenor Defendant. *
* * * * * * * * * * * * * * * *
```

Joseph A. Camardo, Jr., Auburn, NY, for plaintiff. Justin T. Huffman, Auburn, NY, of counsel.

Ryan M. Majerus, United States Department of Justice, with whom were Stuart F. Delery, Assistant Attorney General, Robert E. Kirschman, Jr., Director, Bryant G. Snee, Deputy Director, Washington, DC, for defendant. William Robinson, United States Department of Justice, Federal Bureau of Prisons, Washington, DC, of counsel.

James Lynn Werner, Columbia, SC, for intervenor-defendant. Lawrence M. Hershon, Columbia, SC, of counsel.

---

[1] This opinion was issued under seal on August 15, 2014. Pursuant to ¶ 7 of the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged. No redactions were proposed by the parties. Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

---

**OPINION AND ORDER**

---

**Bush**, *Senior Judge*.

This pre-award bid protest arises out of Request for Proposals (RFP) No. 200-1198-SE, by which the United States Department of Justice, Federal Bureau of Prisons (BOP), seeks to procure residential reentry center services (a halfway house and attendant services) for federal offenders in Columbia, South Carolina. Bannum, Inc. (Bannum) filed a pre-award bid protest complaint on May 19, 2014 seeking declaratory and permanent injunctive relief associated with the BOP's decision to eliminate Bannum's proposal from the competitive range. Before the court is defendant's motion to dismiss brought under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), and cross-motions for judgment on the administrative record filed by all parties.

The administrative record (AR) was originally filed under seal on June 4, 2014, and was supplemented by the government on July 8, 2014.[2] Briefing was filed according to an expedited schedule and oral argument was held on July 22, 2014.

As discussed below, Bannum has standing to bring this suit; defendant's motion to dismiss is therefore denied. The BOP's decision to eliminate Bannum's proposal from the competition, however, was proper. Accordingly, plaintiff's motion for judgment on the administrative record is denied, and defendant's and

---

[2]/ On July 2, 2014, the government filed an unopposed motion to supplement the AR with two documents that had been inadvertently omitted from the AR. That same day, intervenor-defendant Alston Wilkes Society, Inc. (AWS) filed a motion to supplement the AR with a declaration prepared by Heather Andrews, Director of Residential Reentry Services at AWS, as well as a document purporting to be AWS's past performance submission delivered to the BOP on March 21, 2013. Both plaintiff and the government oppose intervenor-defendant's motion. In orders dated July 7, 2014, the court granted the government's unopposed motion to supplement but deferred ruling on intervenor-defendant's motion to supplement, which the court addresses *infra*.

intervenor-defendant's motions for judgment on the administrative record are granted.

**BACKGROUND**[3]

## I.   Request for Proposals

On January 24, 2013, the BOP issued RFP No. 200-1198-SE to procure residential reentry center (halfway house) services for federal offenders in Columbia, South Carolina.  AR Tab 1.  The services include employment and residence development as well as other self-improvement opportunities, and are intended to assist federal offenders in their transition from prison to the community.  *Id.* at 57.  These services are to be provided in accordance with task orders issued pursuant to a firm-fixed price "indefinite delivery, requirements type contract" for a two-year base period, followed by three one-year option periods. *Id.* at 8; *see also id.* at 41.

The original deadline for the submission of proposals was March 27, 2013, but the deadline was subsequently extended to April 3, 2013 through an amendment to the RFP.  AR at 5, 242.  The RFP stated that award would be made to the responsible offeror whose proposal was deemed to represent the best value after evaluation in accordance with the factors and subfactors in the solicitation. AR at 40; *see also id.* at 46.  Section M of the RFP lists the evaluation factors for award, and divides those factors into three broad areas:  Past Performance, Technical/Management, and Price.  *Id.* at 46.  Past Performance is more important than Technical/Management; when combined, these two areas are significantly more important than Price.  *Id.*

Section L.6 of the RFP set forth the requirements for the Technical/Management proposal (Volume I of each bid submission).  Of particular relevance here, section L.6 required that "offerors shall provide the Contracting Officer with valid proof of all zoning and local ordinance requirements necessary

---

[3]/  In the following section, the court sets forth its findings of fact drawn from the AR and the parties' submissions.  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (stating that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court").  Unless otherwise noted, the facts do not appear to be disputed.

3

for the operation of [the] Residential Reentry Center, or any other program specified on the Work Statement applicable to any and all proposed performance sites." AR at 45. Such proof of zoning was to be provided either in the offeror's initial proposal or, if not contained in the initial proposal, within sixty days after the date of the initial proposal submission. *Id.* In addition, offerors were "required to maintain proper zoning throughout the life of the contract." *Id.* Finally, section L.6 warned offerors that failure to establish and maintain valid proof of zoning "may result in elimination prior to award and termination for default following award." *Id.*; *see also id.* at 208 (reiterating in the solicitation's "Compliance Matrix" the requirement to establish and maintain valid proof of zoning, and stating that failure to meet the requirement could be grounds for elimination or default termination).

## II.    Evaluation of Initial Proposals and Bannum's Elimination

The BOP received proposals from two offerors:  Bannum and Alston Wilkes Society, Inc. (AWS), the incumbent BOP halfway house contractor in Columbia, South Carolina.  On March 27, 2013, Bannum submitted its proposal to operate a halfway house located at 1315 Calhoun Street in Columbia, South Carolina (the Calhoun Street property).  AR Tab 5.  Bannum did not provide proof of zoning for the Calhoun Street property with its proposal.  Instead, it provided a November 29, 2012 letter signed by K. Brian Cook, Zoning Administrator for the City of Columbia, informing Bannum that it would have to obtain a "special exception" from the city's Board of Zoning Appeals in order to operate a halfway house at the Calhoun Street property.  *Id.* at 511.  Because Bannum did not submit proof of zoning with its proposal, the RFP required it to submit such proof no later than May 28, 2013, *i.e.*, sixty days after March 27, 2013.[4]  *Id.* at 45.  Bannum never submitted a request to the BOP for an extension of time in which to submit proof of zoning for the Calhoun Street property.

Mr. Cook explained in his November 29, 2012 letter to Bannum that the process for obtaining a zoning special exception takes approximately forty-five days from the application deadline through the Board of Zoning Appeals' review and approval.  AR at 511.  The Board's 2013 meeting calendar, available publicly on its website, listed the special exception application deadlines and the

---

[4]/  May 26, 2013 was a Sunday, and May 27, 2013 was a federal holiday, Memorial Day.

4

corresponding dates of public hearings at which the Board would hear those applications. *Id.* at 1196-98.  Four application deadlines – February 13, March 13, April 10, and May 15 – passed between January 24, 2013, when the RFP was issued, and May 28, 2013, which was Bannum's deadline to provide proof of zoning for the Calhoun Street property. *Id.* at 1196.  Hearings on applications filed during that period were scheduled to be held on March 12, April 9, May 14, and June 11, with each hearing scheduled approximately one month after the corresponding application deadline. *Id.*

Bannum did not file its application for a zoning special exception until the May 15, 2013 deadline.  Compl. ¶ 7; AR at 824, 834.  According to the Board of Zoning Appeals' 2013 calendar, the hearing date for Bannum's application was scheduled for June 11, 2013, two weeks after Bannum's May 28, 2013 deadline to provide proof of zoning for the Calhoun Street property. *Id.* at 1196.

The Board approved Bannum's requested special exception at the Board's June 11, 2013 meeting.  Compl. ¶ 8; AR at 808-09, 824.  The Board's approval, however, was subject to certain conditions, including:  (1) that residents of Bannum's program "shall be non-violent Federal offenders"; and (2) that Bannum's "[a]pproved use of [the Calhoun Street property] must begin by December 1, 2013." *Id.* at 809.

On June 14, 2013, Bannum sent an e-mail to the BOP stating that it had received zoning approval and would forward the Board's written order to that effect within a few days.  AR at 934.  On June 27, 2013, thirty days after Bannum's May 28, 2013 deadline to provide proof of zoning for the Calhoun Street property, Bannum received the Board's written order and forwarded it to the BOP. *Id.* at 807-09.

On July 12, 2013, the BOP notified Bannum that it had been excluded from the competitive range of proposals because it had failed to submit valid proof of zoning for the Calhoun Street property within sixty days of submitting its proposal.  AR at 810-12.  At Bannum's request, the agency provided a written debriefing on July 16, 2013, reiterating that Bannum had failed to satisfy the requirement of the RFP that proof of zoning be provided within sixty days of proposal submission. *Id.* at 814-20.

III.    **Bannum's Agency and Government Accountability Office Protest**s

Bannum filed an agency protest on July 18, 2013, alleging that the BOP had waived its right to enforce the sixty-day deadline for the submission of proof of zoning because the agency waited too long to notify Bannum of its elimination from the competitive range after the deadline had passed.  AR Tab 12.  The BOP denied the agency protest on August 16, 2013, concluding that the contracting officer acted reasonably and within his discretion in excluding Bannum from consideration, and that the BOP was "not responsible for Bannum's business decision to submit an application [for a special exception] on a date that virtually assured that Bannum would not receive proof of zoning prior to the 60-day deadline."  *Id.* at 831.

On August 26, 2013, Bannum filed a protest with the Government Accountability Office (GAO) in which it reiterated its argument that the BOP had waived its right to eliminate Bannum from consideration because the agency did not immediately eliminate Bannum after the sixty-day deadline for the submission of proof of zoning had passed.  AR Tab 15.  On October 22, 2013, the GAO dismissed the protest pursuant to 4 C.F.R. § 21.3(i) (2013) based on Bannum's failure to timely file its comments on the agency report.  AR Tab 26.

IV.    **Bannum's First Protest in This Court**

More than two months later, on December 30, 2013, Bannum filed a bid protest complaint in this court, alleging that the BOP improperly eliminated Bannum from consideration for award.  *Bannum, Inc. v. United States*, No. 13-1027.  In that complaint, Bannum reiterated its contention that the BOP waived its right to enforce the sixty-day deadline for the submission of proof of zoning.  Compl. ¶ 18.  In addition, plaintiff asserted that its elimination from the competitive range of proposals was improper because the agency's decision resulted in a competitive range of one offeror.  *Id.*  Bannum requested an injunction directing the BOP to reinstate Bannum's proposal into the competitive range and to consider Bannum's proposal for award.

On January 16, 2014, before the filing of the administrative record in that case, the government filed notice that it would take corrective action by conducting a new competitive range determination in which it would evaluate

Bannum's proposal, including Bannum's late-filed proof of zoning for the Calhoun Street property.  Based upon the BOP's planned corrective action, and pursuant to the parties' joint stipulation of dismissal, Bannum's protest was dismissed without prejudice on January 30, 2014.

## V.    Corrective Action and Re-evaluation of Proposals

The BOP allowed Bannum back into the competition on January 22, 2014, when it notified Bannum that it would evaluate Bannum's proposal for award, including Bannum's proof of zoning for the Calhoun Street property.  AR Tab 33. Subsequently, in determining the new competitive range, the agency rated Bannum's technical proposal as deficient for its site location.  *Id.* at 1302.  Despite this unfavorable rating, the BOP nevertheless included Bannum's proposal in the new competitive range for the purpose of conducting discussions.  *Id.*

In its Discussion Notice #1 issued to Bannum on March 14, 2014, the BOP noted the following deficiencies with respect to Bannum's proof of zoning for the Calhoun Street property:

> 1.  Bannum's zoning letter . . . states [that] "[r]esidents shall be non-violent Federal offenders."  Please provide a definition from the city of Columbia, SC as to what is a non-violent federal offender.  The statement of work (SOW) states that the contractor will accept all offenders for placement at the facility and manage any offender referred by the Regional Reentry Manager or their designee.

> 2.  As stated in the corrective action for the Court of Federal Claims Bid Protest, Bannum's zoning is accepted, but after an evaluation, it appears that Bannum's zoning letter states [that] "[a]pproved use of this property must begin by December 1, 2013 . . . ." Please submit official documentation that demonstrates that Bannum has current zoning approval, and will maintain zoning through the life of the contract.  This item is deficient.

AR at 1307.  The BOP directed Bannum to provide a response to Discussion Notice #1 by March 28, 2014.  *Id.* at 1306.

On March 26, 2014, Bannum requested an extension of time in which to respond to Discussion Notice #1.  AR Tab 37.  In its request, Bannum acknowledged that its zoning approval for the Calhoun Street property had lapsed and explained that it could not obtain new zoning approval for the Calhoun Street property because a school had moved into an adjacent property.  *Id.* at 1326. Bannum requested additional time "to negotiate a new lease or purchase a new property, affirm the zoning for the new property or apply for a Special Exception, [and to] create new floor plans, performance layout, 120-day availability and site plans as required by the solicitation."  *Id.*  Bannum further noted that it was in the process of negotiating for a new site location with the owners of seven potential properties.  *Id.*

On March 28, 2014, the BOP granted Bannum an extension until April 11, 2014 to respond to Discussion Notice #1, but noted that Bannum appeared to be requesting a change in site location.  AR at 1334.  In that regard, the agency referred Bannum to section L.6(f) of the RFP, which requires that any request to change the site location be received by the contracting officer within sixty days of initial proposal submission and provides that any other proposed site location change would be "considered an unsolicited proposal modification which may result in elimination from the competitive range."  *Id.* at 44; *see id.* at 1334.  In accordance with this provision, the BOP notified Bannum that any proposed site change request would be considered late, even if the date of Bannum's initial submission were deemed to be January 22, 2014, when the agency initiated its corrective action.  *Id.* at 1335.

Bannum submitted its response to Discussion Notice #1 on April 11, 2014. AR Tabs 39-40.  In its response, Bannum requested permission to change its proposed site location to 3715 Broad River Road in Columbia, South Carolina (the Broad River Road property).  *Id.* Tab 40.  Bannum explained that it had applied to the Board of Zoning Appeals for a special exception to operate a halfway house at the Broad River Road property, and that the Board would consider the application at its June 5, 2014 meeting.  *Id.* at 1340.

8

On April 17, 2014, the BOP completed its revised technical evaluation of proposals. AR Tab 41. The agency again rated Bannum's proposal as deficient for the site location factor because Bannum had not submitted acceptable proof of zoning. *Id.* at 1455-56. The BOP found that Bannum's proof of zoning for the Calhoun Street property had expired on December 1, 2013 and did not allow for the placement of all federal offenders, as required by the RFP. *Id.* at 1455-56; *see id.* at 95 (stating that the contractor "will accept all offenders for placement at the facility and manage any offender referred by the [BOP's Regional Reentry Manager]"). That same day, the BOP eliminated Bannum's proposal from consideration for award, reasoning as follows:

> Bannum has failed to submit and maintain the required proof of zoning. In addition, Bannum's proposed site change as indicated in its response to [Discussion Notice #1] is not within the guidelines of section L.6(f)[] of the solicitation and cannot be accepted. The reasons for not accepting the site change were explained in detail in the BOP's March 28, 2014 letter to Bannum.

*Id.* at 1476.

## VI.   Bannum's Second Protest in This Court

Bannum filed its current protest on May 19, 2014, alleging that it was "improperly eliminated from the competitive range . . . because of the BOP's unreasonable and purposeful delay in issuing the corrective action, and their improper manipulation of the RFP terms and conditions." Compl. ¶ 29; *see also id.* ¶¶ 22-25, 30. Plaintiff asserts that had the agency taken corrective action during Bannum's agency protest or GAO protest, Bannum would not have been eliminated from consideration for award because its zoning special exception for the Calhoun Street property would not have lapsed prior to the agency's re-evaluation of proposals. *Id.* ¶ 30. Because the BOP "knew or should have known" that Bannum's special exception for the Calhoun Street property had expired by the time the agency took corrective action, plaintiff alleges that the corrective action was an improper "subterfuge" designed to "make it essentially impossible for Bannum to be included in the competitive range during the alleged re-evaluation." *Id.* ¶¶ 24-25; *see also id.* ¶¶ 22-23. Based upon the agency's

alleged errors, Bannum seeks:  (1) a declaration that it was improperly eliminated from the competitive range; (2) an injunction directing the BOP to reinstate Bannum's proposal into the competitive range and to consider Bannum's proposal for award; and (3) in the alternative, a court order "directing the cancellation of all bids, and that the contract be re-solicited."  Compl. at 8.

## DISCUSSION

## I.   Bid Protest Jurisdiction

This court "shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1) (2012).  The jurisdictional grant is "without regard to whether suit is instituted before or after the contract is awarded."  *Id.*  As a threshold jurisdictional matter, however, the plaintiff in a bid protest must show that it has standing to bring the suit.  *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (*ITAC*); *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002).

## II.   Standards of Review

### A.   Motion to Dismiss under RCFC 12(b)(1)

In considering the issue of subject matter jurisdiction, this court must presume all undisputed factual allegations in the complaint to be true and construe all reasonable inferences in favor of the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988) (citations omitted).  Where the court's jurisdiction is challenged, the plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.  *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)); *Reynolds*, 846 F.2d at 748 (citations omitted).  If

the plaintiff fails to meet this burden, and jurisdiction is therefore found to be lacking, the court must dismiss the action.  RCFC 12(h)(3).

## B.   Judgment on the Administrative Record

RCFC 52.1(c) provides for judgment on the administrative record.  To review a motion or cross-motions under RCFC 52.1(c), the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356-57 (Fed. Cir. 2005).  The court must make factual findings where necessary.  *Id.*  The resolution of RCFC 52.1(c) cross-motions is akin to an expedited trial on the paper record.  *Id.*

## C.   Bid Protest Review

The court first examines, as a threshold jurisdictional matter, whether the plaintiff in a bid protest has standing to bring the suit.  *ITAC*, 316 F.3d at 1319.  Bid protest standing is limited to those plaintiffs who are actual or prospective bidders and whose direct economic interest would be affected by the award of the contract or by the failure to award the contract.  *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013).  In the circumstances of a pre-award protest where, as here, a protestor challenges the agency's evaluation of proposals received in response to a solicitation, the protestor must show that there was a substantial chance it would have been awarded the contract but for the alleged errors in the procurement process.  *Id.* at 1348-49.

Upon determining that a plaintiff has standing to sue, the court next considers the merits of the bid protest.  A bid protest proceeds in two steps, with the trial court first determining whether the government acted without a rational basis or contrary to law.  *Bannum*, 404 F.3d at 1351.  If the award decision fails review, the court then determines as a factual matter whether the plaintiff was prejudiced by the arbitrary or unlawful conduct.  *Id.*

The standard of review for a bid protest brought pursuant to section 1491(b) is whether the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  28 U.S.C. § 1491(b)(4) (2012) (incorporating the standard set forth in 5 U.S.C. § 706 (2012)); *Banknote Corp. of*

11

*Am. v. United States*, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004) (citing *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057-58 (Fed. Cir. 2000)). Under this standard, a procurement decision may be set aside if it lacks a rational basis or if the agency's decision-making involved a clear and prejudicial violation of statute or regulation. *Banknote*, 365 F.3d at 1351. "A court evaluating a challenge on the first ground must determine 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001)).

This court's bid protest review is "highly deferential." *Advanced Data Concepts*, 216 F.3d at 1058. Under this standard, *de minimis* errors in the procurement process do not justify relief. *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996) (citing *Andersen Consulting v. United States*, 959 F.2d 929, 932-33, 935 (Fed. Cir. 1992)). A bid protest plaintiff bears the burden of proving that a significant error marred the procurement in question. *Id.* In negotiated procurements, as here, the protestor's burden is greater because of the relatively high degree of discretion accorded to the contracting officer. *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907-08 (Fed. Cir. 2013) (citation omitted). "'If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.'" *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).

## III.   Standing

The court begins by addressing the threshold issue of Bannum's standing, which the government contests. *See* Def.'s Mot at 13-15; Def.'s Reply at 2-4. As previously stated, to establish standing Bannum must show that it is an actual or prospective bidder whose direct economic interest is affected by the award of the contract – *i.e.*, that Bannum is an interested party prejudiced by the errors alleged to have been made by the agency. *ITAC*, 316 F.3d at 1319. It is undisputed that Bannum is an actual bidder for this procurement. Thus, the only disputed issue is whether Bannum has demonstrated prejudice by showing a substantial chance that

it would have received the contract award but for the alleged errors in the procurement process.  *Orion*, 704 F.3d at 1348.

Bannum has standing to bring this protest.  Once the BOP took corrective action and allowed Bannum back into the competition, it is clear that the agency considered Bannum to be a viable candidate for award and included Bannum in the competitive range of offerors.  AR at 1302.  This protest focuses on the entire course of conduct of the procurement and includes an allegation that there was disparate treatment of the offerors which favored AWS.  If this allegation were proved to be correct, Bannum, one of only two offerors in the competitive range, would have a substantial chance of contract award once the agency corrected its procurement error or errors.  This is enough to show standing in the circumstances of this procurement.

## IV.   Mootness

The government also argues that much of Bannum's protest is moot because it concerns pre-corrective action conduct of the procuring agency.  Def.'s Mot. at 16-18.  The government's mootness challenge has some merit.  The court concedes, however, that the lack of clarity in plaintiff's presentation of its protest grounds makes a mootness analysis difficult.

The complaint, for example, is not divided into counts which could differentiate, or even identify, Bannum's grounds for protest.  Instead, there is a free-flowing commentary on the actions of the BOP which includes phrases such as "egregiously bad faith behavior," "attempt[] to improperly manipulate the bid protest/corrective action process," "the corrective action was disingenuous from the outset," and "the alleged corrective action was merely a subterfuge."  Compl. at 5-6.  This commentary is then summarized without specifically identifying a particular violation of procurement law:

> Bannum was improperly eliminated from the competitive
> range, solely because of the BOP's unreasonable and
> purposeful delay in issuing the corrective action, and
> their improper manipulation of the RFP terms and
> conditions. . . .   [T]he BOP intentionally manipulated
> the corrective action process to further victimize

> Bannum.  The BOP created a situation where it would be
> impossible for Bannum to comply with the terms of the
> Solicitation.  If a corrective action was taken during
> either the Agency protest or GAO protest, Bannum
> would not have lost its initial Special Exception.
> Because the BOP unreasonably and purposefully delayed
> the issuance of the corrective action, Bannum has again
> been victimized by the BOP's improper actions.
> Additionally, Bannum has been further victimized by the
> BOP's attempt to egregiously use the terms of the RFP to
> improperly deprive Bannum from exercising its rights
> under the corrective action.  Such unconscionable
> actions cannot be tolerated.

*Id.* at 7.  The complaint was never amended to clarify the specific grounds of
Bannum's protest.

Plaintiff's motion for judgment on the administrative record again sets forth
contentions of bad faith, and adds a series of truncated legal arguments
condemning the BOP's treatment of Bannum.  Under the heading of "The BOP
Improperly Eliminated Bannum's Original Proposal from the Competitive Range,"
plaintiff alleges first that the agency waived, through delay, its ability to enforce
the solicitation's requirement for timely proof of zoning.  Pl.'s Mot. at 10.  No
authority is cited for this proposition.  Plaintiff also alleges that the BOP engaged
in disparate treatment of the offerors regarding their proof of zoning.  *Id.* at 11.

Under the heading of bad faith, plaintiff argues that the BOP "never
intended to appropriately consider Bannum's proposal."  Pl.'s Mot. at 12.
According to plaintiff, the record shows that "the BOP never truly intended to give
Bannum a fair opportunity at earning the subject contract."  *Id.* at 14.  Under the
same heading, plaintiff argues that an agency's corrective action must be
reasonable under the circumstances.  *Id.* at 12 (citing *Sheridan Corp. v. United
States*, 95 Fed. Cl. 141, 151 (2010)).

Finally, plaintiff challenges the number of contracts submitted by AWS in
the Past Performance volume of its proposal as being insufficient, and claims that

AWS's proposal was therefore "technically unacceptable[] and subject to elimination from the competitive range." Pl.'s Mot. at 15.

Neither the complaint nor plaintiff's dispositive motion exhibits analytical clarity as to whether the focus of plaintiff's bid protest is on pre-corrective action conduct, post-corrective action conduct, or both.  At oral argument, the court inquired into this issue:

> So, once the corrective action has taken place, Bannum does not view that the playing field is even.  You have to look back before the corrective action took place to measure whether equal treatment was given?

Oral Argument Transcript (Tr.) at 12.  Plaintiff's counsel responded:  "I think so." *Id.*

Defendant ably argues that a corrective action which moots a protest at this court also can moot challenges to pre-corrective action conduct of the agency. Def.'s Mot. at 16 (citing *Galen Med. Assocs., Inc. v. United States*, 56 Fed. Cl. 104 (2003) (*Galen I*), *aff'd*, 369 F.3d 1324 (Fed. Cir. 2004) (*Galen II*).  Plaintiff does not agree but only offers a cursory, unclear and ultimately unpersuasive treatment of the issue:

> While a corrective action may render [a challenge to a prior solicitation process] moot, in this situation, the corrective action was simply to re-consider Bannum's initial proposal.  The evaluation process was not started anew . . . .  By simply going back in time and re-considering Bannum's earlier proposal, outdated information was used.  Since AWS was already operating the incumbent contract, and had an obligation to maintain zoning under that contract, AWS had an unfair competitive advantage.

Pl.'s Reply at 6.  Plaintiff never explains how its mootness analysis rebuts defendant's citation to multiple authorities discussing the mootness of prior protest grounds once the agency has undertaken corrective action.  *See* Def.'s Mot. at 16-

18.  The court therefore agrees with defendant that plaintiff's allegations of error focusing narrowly on Bannum's first elimination from the competition are moot.[5] The court lacks jurisdiction over plaintiff's claims, if any, that focus only on Bannum's first elimination from the competition and other pre-corrective action conduct of the BOP.[6]  *See Myers*, 275 F.3d at 1369 (noting that mootness is a "threshold jurisdictional issue").

Defendant's mootness challenge, however, must be rejected as to Bannum's assertion that disparate treatment marred this procurement.[7]  *See* Pl.'s Mot. at 11 ("The BOP engaged in disparate treatment of the proposals with respect to zoning, in favor of AWS."); Pl.'s Reply at 7 ("The alleged corrective action does not moot out this disparate treatment.").  The United States Court of Appeals for the Federal Circuit has addressed this issue, if obliquely.  In *Galen II*, the Federal Circuit

---

[5]/  Plaintiff also attacks the reasonableness of the BOP's corrective action.  Pl.'s Mot. at 12.  The focus of this attack appears to be on the post-corrective action implementation of the re-evaluation of Bannum's proposal.  *Id.* at 13-14 (arguing that the BOP did not give Bannum enough time to find new zoning proof after its proposal was included in the competitive range, and that the BOP enforced solicitation requirements too harshly in its re-evaluation).  As stated *infra*, the court's finds the re-evaluation of Bannum's proposal to have been reasonable.

In plaintiff's reply brief, Bannum attacks the BOP's corrective action on a new front, arguing that the proper corrective action would have been to re-solicit the requirement for a halfway house.  Pl.'s Reply at 5, 7-8.  Aside from plaintiff's tardiness in raising this argument, plaintiff cites no authority for this contention, and the court finds it unpersuasive.  The BOP's corrective action was reasonable under the circumstances   indeed, Bannum agreed to voluntarily dismiss its protest in light of the corrective action proposed by the BOP.

[6]/  As the court reads the complaint, its focus is on the corrective action taken by the BOP and on subsequent events.  To the extent that plaintiff has attempted to introduce claims in its dispositive motion that solely attack pre-corrective action conduct in this procurement, those claims are beyond this court's jurisdiction.  In particular, plaintiff's protest grounds sounding in waiver and estoppel fall into this category of moot claims.  *See* Pl.'s Mot. at 3, 10-11.

[7]/  Although this assertion is found nowhere in the complaint, plaintiff's reference in the complaint to the BOP's "improper manipulation of the RFP terms and conditions," Compl. ¶ 29, might generously be construed to encompass an allegation of disparate treatment of the offerors.  In light of the expedited briefing schedule adopted in this case, the court will not deny plaintiff an opportunity to reach the merits of this claim simply because it was never set forth in an amended complaint.

16

noted that an agency's corrective action mooted allegations of pre-corrective action violations of law or regulation, but that pre-corrective action conduct might be relevant to establish a *pattern* of erroneous conduct:

> The Court of Federal Claims concluded that Galen's complaints regarding the initial solicitation were rendered moot when the [the agency] vacated the award and agreed to amend the solicitation.  We agree that the complaints based on pre-corrective action events are moot where charged as a specific violation of a code or statute, *but are relevant in order to establish a possible pattern of bias*.

369 F.3d at 1333 (emphasis added).  Because pre-corrective action conduct was relevant to allegations of bias in *Galen II*, pre-corrective action conduct is likely relevant to allegations of disparate treatment in this case.

Thus, plaintiff's disparate treatment claim permits Bannum to challenge pre-corrective action conduct of the BOP as allegedly showing evidence of disparate treatment.  As for bad faith, plaintiff has not pointed to any specific evidence in the record of bad faith, and, at oral argument, plaintiff's counsel would not assert that the BOP had acted in bad faith in this procurement, despite being given repeated opportunities to clarify his client's position on this issue.[8]  Tr. at 7-8.  Thus, the court will not discuss further plaintiff's cursory and inconsistent attempts to allege bad faith on the part of the BOP.  *See, e.g.*, *Galen II*, 369 F.3d at 1330 (citing cases for the proposition that almost irrefragable proof is required to establish bad faith on the part of a procuring agency).

In sum, plaintiff's protest survives defendant's mootness challenge to the extent that Bannum alleges disparate treatment, either in the zoning proof required

---

[8]/  Each of plaintiff's allegations of evidence of bad faith are either vague generalizations ("Bannum contends that the BOP's entire course of conduct consists of the 'well-nigh irrefragable proof' that is required [for bad faith]") or insufficient to show bad faith on the part of the BOP (imputing improper motive, without evidence as to motive, into the timing of various BOP actions, the type of corrective action offered to Bannum, and the amount of time allowed to Bannum to correct its zoning defects).  Pl.'s Reply at 8.

of the two offerors, or in the acceptance of AWS's past performance information as adequate. The court now turns to intervenor's motion to supplement the administrative record, before returning to the topic of plaintiff's allegations of disparate treatment.

## V.   Intervenor-Defendant's Contested Motion to Supplement the Record

### A.   *Axiom*

In *Axiom*, the Federal Circuit identified the acceptable circumstances under which the administrative record may be supplemented in a bid protest. The *Axiom* panel criticized a decision by this court which permitted supplementation of the administrative record in a bid protest, and criticized the trial court's over-broad reliance on *Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989), a case which provides a list of justifications for the supplementation of the administrative record of an agency action. *Axiom*, 564 F.3d at 1379-81. The *Axiom* standard provides that "supplementation of the record [in a bid protest] should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Id.* at 1380 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)).

### B.   Declaration Regarding Past Performance Contracts Submitted to the BOP

The AR contains both AWS's Past Performance submission to the BOP, Volume III of its proposal, and the evaluation of that submission. AR at 493-98, 1478-87. According to these documents, AWS only submitted one contract in Volume III of its proposal to demonstrate the relevance and quality of its recent past performance. *See id.* at 495-97, 1480. The submitted contract in Volume III is the incumbent contract for the services AWS is currently providing the BOP at its halfway house in Columbia, South Carolina.

According to AWS, "the original paper version of the Proposal submitted to the Government by AWS contained information on five contracts [not just one] performed by AWS in the preceding three years." AWS Supp. Mot. at 2. In other words, AWS asserts that it submitted five contracts in a fifteen-page document to the BOP in Volume III of its proposal, rather than one contract in a

three-page document.  Offerors were limited to three pages per contract in their Past Performance volume.  AR at 205.

AWS therefore concludes that "the Administrative Record appears to be incomplete, and it should be supplemented with the attached [fifteen-page Past Performance volume] so that the Court can take proper review of the record in front of it."  AWS Supp. Mot. at 2.  AWS attaches a declaration regarding the contents of the paper copy of its proposal that was submitted to the BOP, as well as the fifteen-page Past Performance volume that the declarant states was submitted to the BOP.  Bannum and the government both oppose the motion seeking to supplement the record with these documents.

The court must deny the motion.  The government represents that the existing record before the court contains the proposal AWS submitted to the BOP, as well as the BOP's evaluation of that volume; it is the government's evaluation of AWS's Past Performance volume which must be reviewed by this court.  It is irrelevant to that review whether AWS submitted more pages than the three pages of its Past Performance volume that were evaluated by the BOP.  Because the declaration and attached document are not necessary for effective judicial review of the procurement actions in this bid protest, these documents shall not supplement the administrative record filed by the government in this case.

## VI.   Analysis of the Merits

### A.    Zoning Proof for AWS and Bannum

#### 1.    Plaintiff's Burden to Show Disparate Treatment

Plaintiff alleges that the BOP was more lenient regarding AWS's proof of zoning than it was for Bannum's proof of zoning.  The court notes first that AWS and Bannum were not similarly situated as to their proposed properties.  AWS is the incumbent contractor operating the same halfway house that it proposes in its offer.  Bannum, in contrast, proposed to convert a vacant former auto parts store, the Calhoun Street property, into a halfway house.  AR at 806.  Adequate proof of zoning could reasonably differ for the two proposed facilities.  *See* 48 C.F.R. § 1.102-2(c)(3) (2013) ("All contractors and prospective contractors shall be treated fairly and impartially but need not be treated the same.").

Furthermore, the BOP exercises discretion in determining the adequacy of proof of zoning, and its decisions in this regard will only be overturned if arbitrary and capricious. *Bannum, Inc. v. United States*, No. 07-109, 2007 WL 5172433, at *4 & n.4 (Fed. Cl. May 21, 2007). The solicitation did not specify what constitutes "valid proof" of zoning, but did indicate that failure to establish proof of zoning could "result in elimination prior to award." AR at 45; *see also id.* at 208 (requiring "official documentation . . . [of] zoning approval"). Evidence of disparate treatment, in these circumstances, requires more than a simplistic comparison of the communications between the BOP and the two offerors regarding the proof of zoning requirement of the competition.

### 2.   AWS Offered Adequate Proof of Zoning with Its Proposal

With its initial proposal AWS provided a 2011 letter from the zoning authority of Columbia, South Carolina which described the zoning for AWS's existing halfway house, and noted that a certificate of occupancy had been issued to AWS for the use of that property as a halfway house in 1986. AR at 272-73. The BOP rationally concluded that AWS had submitted adequate proof of zoning with its proposal. *Id.* at 858-59. There is nothing arbitrary in that decision.

Subsequently, as the BOP entered into discussions with AWS in September of 2013, several matters were addressed to improve AWS's proposal. These included: (1) rectifying an incomplete attachment to the proposal (the Environmental Checklist); (2) updating the Price Proposal if needed; (3) addressing facility renovations; (4) providing credentials for therapeutic staff; and (5) providing a current proof of zoning letter from the city. AR at 924-26. Although plaintiff seizes upon this request as evidence that AWS's proposal failed to contain adequate proof of zoning at the outset, there is nothing in the record to support that view. The subsequent request for a current proof of zoning letter, in the context of improving AWS's proposal for possible award, does not indicate that the previously submitted zoning proof was in any way inadequate.

### 3.   Bannum's Proposal, Considered Twice by the BOP, Never Contained Adequate Proof of Zoning

In contrast, with its proposal Bannum submitted a letter from the city's zoning authority stating that a special exception would be required from the Board

of Zoning Appeals for Bannum's proposed site, the Calhoun Street property, to be used as a residential care facility. AR at 511. Pursuant to the terms of the solicitation, proof of zoning was required within sixty days of proposal submission. *Id.* at 45, 208. Bannum was thus required to submit adequate proof of zoning by May 28, 2013. Bannum's first attempt to provide adequate proof of zoning was an email dated June 14, 2013, *id.* at 934, announcing that it had received approval for a special exception for the Calhoun Street property, followed by the official letter confirming the approval of a special exception attached to an email dated June 27, 2013, *id.* at 807-09.

Pursuant to the terms of the solicitation, Bannum's proof of zoning was late and as such constituted adequate reason to eliminate Bannum from the competition. AR at 45. The BOP eliminated Bannum from the competition for this reason on July 12, 2013. *Id.* at 810. There is nothing arbitrary or capricious in the BOP's decision.

Once the BOP undertook corrective action in January 2014 and agreed to consider Bannum's proposal despite the untimely submission of proof of zoning, a substantial amount of time had elapsed. It is clear from the record that Bannum knew, or should have known, that its special exception from the Board of Zoning Appeals for the Calhoun Street property had lapsed on December 1, 2013. AR at 809. Nonetheless, the record contains no evidence that Bannum attempted to timely obtain a current zoning special exception for the re-evaluation of its proposal.[9]

On March 14, 2014, the BOP notified Bannum during discussions that its proof of zoning did not appear to be current, and that a condition of its zoning special exception did not conform to the solicitation's requirements (that both

---

[9] Indeed, Bannum appears to have made a business decision not to attempt to maintain current proof of zoning for its proposed halfway house site during the pendency of its protests before this court. *See* Pl.'s Reply at 5 (stating that "Bannum . . . had no further obligation to maintain zoning on its proposed property" as of December 1, 2013). Loss of the opportunity to compete for this contract appears to be largely the result of plaintiff's business planning decisions. *See Bannum, Inc. v. United States*, 56 Fed. Cl. 453, 460 (2003) (noting that while procurement law protects fair and open competition, the law does not "'wholly abandon an assumption of Darwinian principles'" (quoting *Razorcom Teleph & Net, LLC v. United States*, 56 Fed. Cl. 140, 143-44 (2003))).

violent and non-violent offenders be housed at the halfway house). AR at 1307. The BOP provided Bannum with two weeks to respond to this discussion notice, and upon request from Bannum, extended that deadline by another two weeks, to April 11, 2014. *Id.* at 1304, 1334. Bannum communicated to the BOP that its original proposed site for a halfway house, the Calhoun Street property, was no longer eligible for a zoning special exception, because a school had moved into a neighboring property, and outlined its intention to find a new site. *Id.* at 1326. The BOP warned Bannum that a change of site request would be untimely pursuant to the terms of the solicitation. *Id.* at 1334-35.

Bannum nevertheless submitted a site change request to the BOP on April 11, 2014, and noted that its prior zoning special exception had lapsed. AR at 1340. The alternate site is another vacant building, the Broad River Road property, and would require a zoning special exception that could not be considered by the Board of Zoning Appeals until June 4, 2014. *Id.* at 1340, 1391. The BOP eliminated Bannum's proposal from the competitive range on April 17, 2014, noting that Bannum's proof of zoning for the former site was too restrictive (excluding violent offenders) and apparently expired, and that the alternate site could not be accepted because the site change request was untimely. *Id.* at 1432, 1476. The court finds nothing arbitrary or capricious in the BOP's decision to eliminate Bannum from the competition for these reasons, and finds, too, that the BOP's corrective action was a reasonable effort to provide Bannum with a fair chance of competing for the residential reentry services contract.

Although Bannum asserts that disparate treatment regarding the proof of zoning requirement marred this procurement, the court finds none. AWS offered the BOP adequate and timely proof of zoning and Bannum did not. Because Bannum failed to comply with a material requirement of the competition, its proposal was eliminated. Plaintiff's protest based on a charge of disparate treatment cannot be sustained on this record.

## B.     The BOP's Acceptance of AWS's Past Performance Submission Was Rational

Bannum also argues that disparate or unequal treatment tainted its elimination from the competition for deficiency in its proof of zoning, because at the same time AWS's submission of an incomplete Past Performance proposal was

excused by the BOP.  Tr. at 36.  This argument is entirely unsupported by relevant authority addressing, even by analogy, the question of whether the submission of five relevant contracts in a Past Performance volume is a material solicitation requirement in negotiated procurements such as this one.  The solicitation provision regarding the submission of five relevant contracts in Volume III of an offeror's proposal is found in the solicitation's Compliance Matrix.  AR at 205-06.

The court notes, first, that some of the required information regarding AWS's five relevant contracts was provided in its Business Proposal (Volume II of its offer), under the heading "(5) Most Recent and Relevant Contracts in the Past Three Years."  *See* AR at 448-50.  Additional information regarding these five contracts was accessible in a database commonly used by federal agencies, the Past Performance Information Retrieval System (PPIRS).  In addition, three of the contracts identified by AWS in its Business Proposal were BOP contracts for residential reentry center services.  The BOP considered the information contained in AWS's proposal, both in the Past Performance volume and in the Business Proposal volume, as well as the information contained in PPIRS for all three BOP residential reentry center services contracts, to rate AWS's proposal as acceptable for Past Performance.  *Id.* at 1487.

Although the court agrees with plaintiff that AWS's proposal does not conform with the Past Performance submission requirements set forth in the solicitation, the court also agrees with defendant that the requirement for the submission of five relevant contracts was not a material term of the solicitation.  To be material, a solicitation requirement must have more than a negligible impact on the evaluation of proposals.  *See Blackwater Lodge & Training Ctr., Inc. v. United States*, 86 Fed. Cl. 488, 505 (2009) (stating that "[a] solicitation term is material where it has *more than a negligible impact* on the price, quantity, quality, or delivery of the subject of the bid") (emphasis added) (citation omitted).  In the circumstances of the BOP's evaluation of AWS's proposal, the requirement for the submission of five relevant contracts in the Past Performance volume had only a negligible impact on the competition.

The BOP had access to and considered the past performance information regarding AWS's performance of its highly relevant incumbent residential reentry center services contract in Columbia, South Carolina in the Past Performance volume of AWS's proposal.  The BOP also had access to and considered similar

information for AWS's other highly relevant residential reentry center services contracts in Charleston and Florence, South Carolina through PPIRS.  The incomplete information provided by AWS therefore had only a negligible impact on the qualitative evaluation of AWS's past performance.   The BOP rationally accepted the incomplete Past Performance volume provided by AWS and rationally rated AWS as acceptable for this evaluation factor.

Finally, the court finds no disparate treatment in the BOP's consideration of past performance information that was not included in AWS's Past Performance volume, as compared with the elimination of Bannum from this competition for lack of proof of zoning.  The past performance information relied upon by the BOP was "close at hand," in that AWS had performed BOP residential reentry center services contracts and the PPIRS database included detailed information on the performance of those contracts.  *See Shaw Parsons Infrastructure Recovery Consultants, LLC*, B-401679.4, 2010 CPD ¶ 77 (Comp. Gen. Mar. 10, 2010) (stating that "the very nature of the 'close at hand' principle . . . reflects the duty of an agency to consider relevant information in its possession notwithstanding whether it was actually submitted by an offeror"); *see also BCPeabody Constr. Servs., Inc. v. United States*, 112 Fed. Cl. 502, 510 (2013) (holding that an agency should have clarified the protestor's "copying error in assembling its offer" which omitted certain past experience information for its subcontractor, when that past experience information was already in the possession of the proposal evaluator).

In contrast, adequate proof of zoning for Bannum's proposed halfway house was not close at hand when the agency evaluated Bannum's proposal – in the first instance, the proof of zoning was deficient because it was late (for the Calhoun Street property), and in the second instance, the proof of zoning had either lapsed and was too restrictive (for the Calhoun Street property) or did not yet exist (for the Broad River Road property).  The court concludes that Bannum did not experience disparate treatment when the BOP rated AWS's past performance as acceptable.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that

(1)     Plaintiff's Motion for Judgment on the Administrative Record, filed June 18, 2014, is **DENIED**;

(2)     Defendant's Motion to Dismiss, filed July 2, 2014, is **DENIED**;

(3)     Defendant's Cross-Motion for Judgment on the Administrative Record, filed July 2, 2014, is **GRANTED**;

(4)     Intervenor-defendant's Cross-Motion for Judgment on the Administrative Record, filed July 2, 2014, is **GRANTED**;

(5)     Intervenor-defendant's Motion to Supplement the Administrative Record, filed July 2, 2014, is **DENIED**;

(6)     The Clerk's Office is directed to **ENTER** final judgment in favor of defendant and intervenor-defendant, **DISMISSING** the complaint with prejudice;

(7)     On or before **September 5, 2014**, counsel for the parties shall **CONFER** and **FILE** with the Clerk's Office a **redacted copy** of this opinion, with any material deemed proprietary or confidential marked out and enclosed in brackets, so that a copy of the opinion can then be prepared and made available in the public record of this matter; and

(8)     Each party shall bear its own costs.


/s/Lynn J. Bush
LYNN J. BUSH
Senior Judge

25